**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

ABDULLAH MOHAMED GEDI,

    Petitioner,

v.

EMILIO GONZALEZ, Director,
U.S. Citizenship and Immigration
Services, DONALD MONICA,
Acting District Director, USCIS,
Atlanta District Office, MICHAEL
B. MUKASEY, United States
Attorney General, MICHAEL
CHERTOFF, Secretary,
Department of Homeland Security,

    Respondents.

CIVIL ACTION NO.
1:07-CV-2507-RWS

## **ORDER**

This case is before the Court on Petitioner's Motion for Summary Judgment [14]. After considering the entire record, the Court enters the following Order.

### **Background**[1]

---

[1] The Court makes no findings with regard to the facts stated herein, which are drawn primarily from Respondents' response to Petitioner's Statement of Facts.

On June 21, 1998, Petitioner Mr. Abdullah Mohamed Gedi, a seventy-year-old native of Somalia, filed his first application for naturalization (Form N-400) with the United States Citizenship and Immigration Service (hereinafter "USCIS"). In Part 3 of the N-400, Petitioner indicated that his only trip outside the United States since becoming a permanent resident was from September 1994 to October 1994 when he traveled to Kenya for the stated purpose of visiting his family. Petitioner was interviewed on the application on August 31, 2000. At the conclusion of the interview, Petitioner was given an opportunity to correct information in the N-400 before verifying under oath that the contents were true. Petitioner did not correct any information regarding his trips outside the United States.

On February 27, 2002 USCIS issued a decision saying that Petitioner was ineligible for naturalization for failure to provide tax returns, birth certificates for his children, and proof of termination of all prior marriages. Petitioner requested a hearing pursuant to 8 U.S.C. § 336(a), and he appeared for a hearing on June 26, 2003. The denial was upheld for lack of good moral character because he was practicing polygamy pursuant to 8 C.F.R. § 316.10(b)(ix).

On December 17, 2003, Petitioner filed a second application for naturalization. On October 6, 2005, Petitioner was interviewed under oath by a designated examiner about information contained in his application. A determination was made that Petitioner was ineligible for naturalization due to lack of prosecution. Specifically, Petitioner failed to provide documents that USCIS requested: a marriage certificate for his current spouse Fatumo Abdulle Mohamud and a divorce decree from his former spouse Bintow Mohamed Nur.

On May 5, 2006, Petitioner filed a 336(a) Request for a Hearing on a Decision in a Naturalization Proceeding. He was interviewed on May 30, 2006. He provided two affidavits to prove his divorce from his former wife and his marriage to his current wife. However, the hearing examiner noticed a discrepancy in Petitioner's testimony and his 1998 N-400 form. Specifically, Petitioner stated in his 1998 N-400 application that his only trip since becoming a lawful permanent resident was to Kenya from September through October 1994. But during the 336(a) hearing on May 30, 2006, Petitioner disclosed that he traveled to Somalia in 1994-1995 for six or seven months in order to divorce his former spouse, Ms. Nur.

AO 72A
(Rev.8/82)

A determination was made pursuant to 8 C.F.R. § 316.10(b)(2)(vi) that Petitioner was ineligible for naturalization due to lack of good moral character because he gave false testimony under oath to obtain an immigration benefit. Petitioner timely filed a petition for review with the Court pursuant to 8 U.S.C. 1421(c). Petitioner now moves for summary judgment.

## Analysis

### I. Standard of Review

An applicant seeking to become a naturalized citizen may appeal the denial of his application by USCIS to the district court for the district in which he resides. 8 U.S.C. § 1421(c); 8 C.F.R. § 310.5(b). Section 1421(c) provides for the Court to conduct a *de novo* review of the denial of Petitioner's application for naturalization.

According to the Immigration and Nationality Act (hereinafter "the INA"), a district court's review of a denial of naturalization is made "in accordance with chapter 7 of Title 5;" i.e., the Administrative Procedures Act (hereinafter "the APA"). 8 U.S.C. § 1421(c). However, in contrast to the generally limited review provided by the APA, the INA provides that review of a naturalization denial "shall be *de novo*, and the Court shall make its own

4

findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing *de novo* on the application." 8 U.S.C. § 1421c.

## II. Motion for Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The applicable substantive law

5

identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (stating that once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

6

### III. Good Moral Character

An applicant for U.S. citizenship must demonstrate that he is a person of "good moral character." 8 U.S.C. § 1427(a)(3); 8 U.S.C. § 1101(f); C.F.R. § 316.10. While the INA does not define good moral character, it does provide a non-exhaustive list of instances in which a person should not be regarded as having good moral character. 8 U.S.C. § 1101(f). Courts analyze good moral character on a case-by-case basis using "the standard of the average citizen in the community" as a guide. 8 C.F.R. § 316.10(b). The INA does, however, provide guidance in a few special situations. Here, the pertinent section provides that

> [n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . one who has given false testimony for the purpose of obtaining any benefits under this chapter.

8 U.S.C. § 1101(f)(6). It is Petitioner's burden to establish by a preponderance of the evidence that he meets all of the requirements of naturalization and any doubts are to be resolved in favor of the United States. Berenyi v. District Director, INS, 385 U.S. 630, 637 (1967). Here, on *de novo* review, the Court

7

must decide whether Petitioner had the subjective intent to obtain an immigration benefit.

In this inquiry, the subject matter of the false testimony is irrelevant, and it does not matter whether the false testimony was given to hide a fact that would actually disqualify an applicant from naturalization. 8 C.F.R. § 316.10(b)(2)(vi). Furthermore, false testimony is not rendered inconsequential due to its seemingly innocuous nature; instead, any testimony given under oath which is false can be used to show that the Petitioner lacked good moral character, no matter how trivial or inconsequential. See Kungys v. United States, 485 U.S. 759, 780 (1988). The true inquiry is whether the false testimony was given with the subjective intent to obtain an immigration benefit. Id. at 779-80. Thus, it is the subjective intent to deceive the federal government in an attempt to obtain an immigration benefit that reflects poorly upon an applicant's good moral character. Id.

Respondents maintain that Plaintiff omitted his 1994-95 trip to Somalia because he wished to have a benefit in gaining citizenship.[2] The residency

---

[2] Respondents further argue that Petitioner's application should be denied based on his failure to read, write, and speak English, as evidenced by his need for an interpreter. After considering the entire record, the Court declines to revisit the

8

requirements for naturalization are set forth as follows in the INA:

(a) Residence

No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant,

(1) immediately, preceding the date of filing his application for naturalization has resided continuously, after being admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months,

(2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and

(3) during all the period referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

(b) Absences

Absences from the United States of more than six months but less than one year during the period for which

---

finding of the USCIS that Petitioner demonstrates the requisite understanding of the English language.

> continuous residence is required for admission to
> citizenship, immediately preceding the date of filing the
> application for naturalization, or during the period between
> the date of filing the application for naturalization and the
> date of any hearing under section 1447(a) of this title, shall
> break the continuity of such residence, unless the applicant
> shall establish to the satisfaction of the Attorney General
> that he did not in fact abandon his residence in the United
> States during such period.

8 U.S.C. § 1427 (a) and (b).

Thus, under the statute, although absence from the United States during the five-year period is authorized, an applicant cannot be absent for more than six months without having to prove he did not abandon his residence. 8 U.S.C. § 1427(b). By Petitioner's own testimony, he was out of the country in Kenya and Somalia for six or seven months.[3] If he had disclosed this information on his 1998 N-400 application, he would have had to prove that he did not abandon his residence pursuant to 8 C.F.R. § 316.5(c)(1)(i). Respondents argue that Petitioner's misrepresentation deprived the immigration examiner from exploring the factors set forth in the regulations for determining whether Petitioner's prolonged absence from the United States constituted an

---

[3] In his briefs, however, Petitioner maintains that any trip to Somalia was for no longer than six months but provides no documentation to show how long his trip may or may not have been.

10

abandonment of residence. Consequently, Petitioner directly benefitted from his misrepresentation in that he improved his prospects by not having to undergo extensive questioning about his prolonged absence from the country. Petitioner argues that his omission was remedied by his oral testimony during the 2006 336(a) hearing and that he showed good moral character by actively mentioning the trip during the interview. See, e.g., Plewa v. INS, 77 F.Supp.2d 905 (N.D. Ill. 1999). Respondents maintain, however, that Petitioner may never have disclosed the trip even during the 2006 interview but for the fact that he submitted affidavits stating that in 1995 he was married and divorced in Somalia.

The Court agrees with Respondents that although Petitioner now claims that his failure to disclose the trip was an "isolated oversight," the circumstances surrounding Petitioner's misrepresentation and his subsequent disclosure at least raise a question of fact about whether he had the subjective intent to obtain an immigration benefit. This question of fact turns on his credibility, which the Court deems best assessed at a hearing. See, e.g., St. Amanze v. INS, 2003 WL 22061870, *5 (D.R.I. March 28, 2003). As the movant for Summary Judgment, Petitioner has not met his burden of showing

11

that no genuine issue of material fact exists.  Consequently, summary judgment for Petitioner is hereby **DENIED**.

## Conclusion

In Conclusion, Petitioner's Motion for Summary Judgment [14] is hereby **DENIED**.

**SO ORDERED**, this  14th  day of August, 2009.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

12